IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BOBBY FRANKLIN MCREYNOLDS            PLAINTIFF

v.        Civil No. 4:16-cv-04122

PRESTON GLENN, Jail Administrator,
Nevada County Jail; DR. ELKINS,
Nevada County Jail; and SHERIFF
DANNY MARTIN, Nevada County Jail            DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro se* by Plaintiff, Bobby Franklin McReynolds, under 42 U.S.C. § 1983. Currently before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 80) and Defendants Preston Glenn, Dr. Darrell Elkin[1] and Danny Martin's Motion for Summary Judgment. (ECF No. 97). Defendants filed a Response to Plaintiff's motion on November 20. 2017. (ECF No. 88). Plaintiff filed a Response to Defendants' motion on April 11, 2018. (ECF No. 102). The Court finds this matter ripe for consideration.

### I. BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – Randall L. Williams Correctional Facility, in Pine Bluff, Arkansas. This case arises from incidents which occurred while Plaintiff was being held at the Nevada County Jail ("NCJ") in Prescott, Arkansas.

Viewed in the light most favorable to Plaintiff, the relevant facts are as follows. Plaintiff was booked into the NCJ on November 23, 2016, where he remained until he was released to the ADC on December 8, 2016. (ECF No. 80, p. 7). During this time, Defendant Glenn was the Jail

---

[1] Defendant Elkin is incorrectly referred to as Dr. Elkins in the case caption.

1

Administrator for the NCJ.  Defendant Elkin was the medical doctor for the NCJ.  Defendant Martin was the Sheriff of Nevada County.

On November 30, 2016, Plaintiff slipped and fell while exiting the shower at the NCJ injuring his head, knee, shoulder and back.  Plaintiff was immediately transported by ambulance to Wadley Regional Medical Center in Hope, Arkansas.  (ECF No. 98, p. 2).  Plaintiff was examined by a physician and discharged from the hospital later that day with a prescription for a pain reliever and instructions to continue his regularly scheduled medical care.  (ECF No. 99-2).  No x-rays were taken of Plaintiff's injuries, and he was not given any medical restrictions from the physician at the hospital.   When Plaintiff returned to the NCJ he was assigned to a top bunk on the second floor of B Pod.  Plaintiff asked Defendant Glenn to move him to a bottom bunk but was told there were no other bunks available.  For approximately eight days Plaintiff was required to go up and down stairs, and climb up to and down from his top bunk.  Plaintiff also asked for a "second [medical] opinion" and was seen by Defendant Elkin five days after his request.  (ECF No. 80, p. 3).

Plaintiff filed his initial Complaint in the Eastern District of Arkansas on December 8, 2016. (ECF No. 2).  The case was then transferred to the Western District of Arkansas on December 21, 2016.  (ECF No. 5).  On February 10, 2017, Plaintiff filed an Amended Complaint.[2]  (ECF No. 21).  Plaintiff alleges that Defendant Glenn "would not help me, get any relieve when I go back to the jail, he keeped me upstairs (B) Pod top Rack.  He would not help me at the time I got back from Whattley Medical Center…I'm suing him for…dellberate indifference." *Id* at p. 2.  Plaintiff claims that Defendant Martin, as sheriff, "knows what goes on at his jail at all times.

---

[2] Plaintiff also named Dr. Christopler Wattingny and Wadley Regional Medical Center as defendants in the Amended Complaint.  On June 21, 2017, the Court dismissed Plaintiff's claim against the hospital.  (ECF No. 70).  On October 19, 2017, the Court dismissed Plaintiff's claim against Dr. Wattingny.  (ECF No. 78).

Sueing him also for…dellberate indifference." *Id.* With respect to Defendant Elkin, Plaintiff alleges he "seen me 3 to 4 days later, said he would get permission from (ADC) but he did not and I stayed hurting and criple within much pain." *Id.* Plaintiff seeks compensatory damages. He is suing Defendants in both their individual and official capacities.

Plaintiff filed his Motion for Summary Judgment on October 27, 2017. (ECF No. 80). However, he did not submit a separate statement of undisputed facts with the motion. Instead, Plaintiff submitted discovery answers he received from Defendants. Plaintiff argues he is entitled to summary judgment because Defendants were deliberately indifferent to his medical needs. Defendants filed their Motion for Summary Judgment on March 28, 2018, arguing that they are entitled to summary judgment because the facts, taken in the light most favorable to Plaintiff, do not rise to the level of a constitutional violation and because Defendants are entitled to qualified immunity. (ECF No. 97).

Plaintiff filed his Response to Defendants' motion on April 11, 2018. He does not dispute that he was sent back to the NCJ without medical restrictions.[3] However, as evidence that he was injured, Plaintiff submits medical records from treatment he received at the ADC after leaving the NCJ. An ADC Condensed Health Services Encounter dated January 5, 2017 reveals that an x-ray was done on Plaintiff's left knee, left hand, and right shoulder on or about December 30, 2017. The notes from Elliot Wagner, M.D. from January 2, 2017, state in part:

> KNEE EXAM 3V AP LAT OBLIQUE, LEFT
> Results: There is a fracture involving left proximal fibula with minimal displacement. The joint shows no dislocation. There is associated joint effusion.
> Conclusion: Old healing left knee fracture as described above.

---

[3] It is clear from the pleadings that Plaintiff was not satisfied with the treatment he received from Dr. Wattingny at Wadley Medical Center and disagreed with his medical conclusions.

(ECF No. 102, p. 5). Dr. Wagner also notes that there were no fractures to Plaintiff's fingers, left hand, or right shoulder. *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Inadequate Medical Care

Plaintiff alleges Defendants Glenn, Elkin and Martin were deliberately indifferent to his serious medical needs after he returned to the NCJ from the hospital on November 30, 2016. The

4

Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

There is no question that Plaintiff has established that he suffered from a serious medical condition requiring treatment by a physician at a local hospital on November 30, 2016. However, Plaintiff has presented no evidence to show that any Defendant knew of and disregarded his medical needs. Rather, the summary judgment evidence shows Plaintiff was taken to the hospital immediately after falling. Plaintiff was placed in the upper tier of the NCJ and assigned to a top bunk for a total of eight days before he was transferred to the ADC. It was only after he left the NCJ that Plaintiff received an x-ray on or about December 30, 2016, which revealed he had "old

healing" from a left knee fracture. Even if the Court assumes that Plaintiff fractured his knee when he fell at the NCJ, there is no way that Defendants could have known this information between November 30, 2016 and December 8, 2016.

Although Plaintiff communicated to Defendants Glenn and Elkin that he was in pain and did not want to be assigned to a top bunk or placed in a cell on the top floor, the record demonstrates that Plaintiff was not given any instructions from the hospital requiring such restrictions. It is not an Eighth Amendment violation when Defendants, in exercising their professional judgment, refuse to implement an inmate's requested course of treatment. *Vaughn v. Gray*, 557 F.3d 904, 908-09 (8th Cir. 2009). Likewise, Defendant Elkin's failure to order x-rays does not establish a constitutional violation. Mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *See Phillips v. Jasper Cnty. Jail*, 437 F.3d 791 (8th Cir. 2006) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Finally, Plaintiff's claim that, as sheriff, Defendant Martin knew what was going on in the jail does not subject him to liability under § 1983. Despite a government official's title, he is only liable for his own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Court finds there is no evidence to support Plaintiff's individual capacity claim that Defendants were deliberately indifferent to his medical needs. Because Plaintiff has failed to establish a violation of a constitutional right, it is not necessary for the Court to address the issue of qualified immunity.

**B. Official Capacity Claims**

Plaintiff also sues Defendants in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity

claims against Defendants are treated as claims against Nevada County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). "[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Defendants under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, Plaintiff has not alleged that any policy, practice, or custom of Nevada County contributed in any way to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims against all Defendants fail as a matter of law. *Id.*

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 80) is **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 97) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE.** A judgment of even date shall issue.

**IT IS SO ORDERED**, this 27th day of April, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge